FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 16, 2022

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ALAN D. ROBERTSON, <br><br>   Plaintiff, <br><br>   v. <br><br> LORNE A. DORN; and KIM DORN, <br><br>   Defendants. | No. 2:21-CV-00064-SAB <br><br><br> **ORDER RE: MOTIONS** |

Before the Court are Plaintiff's Motion to Exclude Defense Experts Norton, Capron, and Ries, ECF No. 79; Defendants' Motion to Continue Briefing Deadlines Associated with Plaintiff's Motion to Exclude Expert Witnesses, ECF No. 94; Plaintiff's Motion to Exclude Loftus, ECF No. 98; Providence Sacred Heart Medical Center's Motion for Protective Order, or in the Alternative, to Quash or Modify Subpoena, ECF No. 125; and Providence Sacred Heart Medical Center's Motion to Expedite, ECF No. 126. Plaintiff is represented by David Beninger; Mark Kamitomo; Patricia Anderson; and George Ahrend. Defendants are represented by Patricia Buchanan; Megan Starks; and Sara Sutton. Providence Sacred Heart Medical Center is represented by Andrew Wagley and Stephen Lamberson. The motions were considered without oral argument.

The Court will first address Plaintiff's Motions to Exclude. The Court will then address Providence Sacred Heart Medical Center's Motion for Protective Order and Defendants' Motion to Continue.

//

**ORDER RE: MOTIONS** # 1

**Factual Background**

On January 30, 2020, sometime in the afternoon or evening, Plaintiff Alan Robertson pulled over in his car when he saw an injured deer in the roadway. At the time, Laura Liebman (Plaintiff's partner) and Ali Wiley (Ms. Liebman's 17-year-old niece) were riding in the car with Plaintiff. Plaintiff alleges that he remembers that the deer was located in the northbound lane (the lane that Plaintiff was traveling in), except for its hindquarters, which were on the center line. Ms. Liebman, in her deposition, also stated that she remembered seeing Plaintiff and the deer in the northbound lane. However, Ms. Wiley in her deposition stated that she remembered seeing the deer in the southbound lane (the lane that Defendants were traveling in), closer to the center line, and that Plaintiff was trying to drag the deer to the opposite shoulder of the road. Regardless, as Plaintiff was dragging the deer to the side of the road, Defendants Lorne and Kim Dorn drove down the road and struck Plaintiff with their pickup truck—Mr. Dorn was driving, while Mrs. Dorn was in the passenger seat. Defendants were on their way home from skiing at Red Mountain in British Columbia when they hit Plaintiff. Defendants allege that they did not see Plaintiff or the deer in the road at the time of the collision.

After the collision, Plaintiff was flown to Providence Sacred Heart Medical Center. While Plaintiff was in the emergency room, he received a test called the serum/plasma enzymatic immunoassay ("the EIA test"), along with various other tests and treatments for his injuries. Hospitals use the EIA test as an initial screening test for the presence of alcohol. Specifically, the EIA test adds a reagent, alcohol dehydrogenase (ADH), and a coenzyme, nicotinamide adenine dinucleotide (NAD+), to a patient's serum/plasma sample. The ADH catalyzes any ethanol in the sample to acetaldehyde, which reduces NAD+ to nicotinamide adenine dinucleotide hydride (NADH). Thus, the EIA test measures the resulting level of NADH as a proxy for the level of alcohol in the sample. Plaintiff's EIA test showed 79 mg/dL of the NADH enzyme—Plaintiff argues that this was within

**ORDER RE: MOTIONS** # 2

normal limits, whereas Defendants argue that this indicates an elevated alcohol level.

## Procedural History

Plaintiff filed his Complaint in the Stevens County Superior Court on November 16, 2020. ECF No. 1-1. In the Complaint, Plaintiff named Defendants Lorne and Kim Dorn; Desjardins General Insurance Group d/b/a Certas Home and Auto Insurance Company ("Certas"); and any other John Does that may have liability arising from the collision. Plaintiff asserted claims for breach of express or implied terms and conditions of the insurance contract; violations of the Consumer Protection Act; negligence; and estoppel from denying insurance coverage or benefits.

Defendants removed the case to federal court on January 28, 2021, based on diversity jurisdiction. ECF No. 1. On March 3, 2021, Defendant Certas filed a Motion for Summary Judgment. Judge Rosanna M. Peterson granted the motion on August 6, 2021, thereby dismissing Certas from the case. ECF No. 27. The case was then reassigned to Chief Judge Stanley A. Bastian on October 21, 2021. ECF No. 43.

Jury trial in this case was originally set for April 18, 2022. ECF No. 65. However, due to the parties' continued discovery disputes, the Court reset the trial date to August 29, 2022. ECF No. 75. Plaintiff filed his Motion to Exclude Defense Experts Norton, Capron, and Ries on December 28, 2021. ECF No. 79. Defendants filed their Motion to Continue Briefing Deadlines Associated with Plaintiff's Motion to Exclude Defense Experts Norton, Capron, and Ries on January 3, 2022. ECF No. 94. Plaintiff filed his Motion to Exclude Loftus on January 4, 2022. ECF No. 98. Providence Sacred Heart Medical Center, an interested third party, filed its Motion for Protective Order, and associated Motion to Expedite, on February 6, 2022. ECF Nos. 125, 126.

//

**ORDER RE: MOTIONS # 3**

I.    **Plaintiff's Motions to Exclude**

Plaintiff seeks to exclude three of Defendants' expert witnesses: Mr. Brian Capron, Dr. Robert Norton, and Dr. Geoffrey Loftus.[1] For all three of these witnesses, Plaintiff argues that their testimony should be excluded because it is unreliable, irrelevant, and unduly prejudicial. For the reasons discussed below, the Court denies Plaintiff's motion to exclude Mr. Capron and Dr. Norton and grants in part and denies in part Plaintiff's motion to exclude Dr. Loftus.

a.    <u>Legal Standard</u>

Fed. R. Evid. 702 provides the starting point for any evaluation of the admissibility of expert testimony. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). It states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Although Rule 702 should be applied with a "liberal thrust" favoring admission, *Daubert*, 509 U.S. at 588, it requires that expert testimony be both relevant and reliable. *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010). "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection

---

[1] Plaintiff's first motion also seeks to exclude defense expert Dr. Richard Ries. ECF No. 79. However, on January 5, 2022, Defendants filed a Notice that they were withdrawing Dr. Ries as a testifying expert. ECF No. 102.

**ORDER RE: MOTIONS # 4**

to the pertinent inquiry. And it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Id.* at 565.

The proponent of expert testimony has the burden of establishing that the admissibility requirements are met by a preponderance of the evidence. *Daubert*, 509 U.S. at 592 n.10; *Lust v. Merrell Dow Pharms. Inc.*, 89 F.3d 594, 598 (9th Cir. 1996). "Shaky, but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Primiano*, 598 F.3d at 564. An opinion is not excludable merely because it is impeachable. *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013). "After an expert establishes admissibility to the judge's satisfaction, challenges that go to the weight of the evidence are within the province of a fact finder, not a trial court judge. A district court should not make credibility determinations that are reserved for the jury." *Pyramid Techs., Inc. v. Hartford Cas. Ins. Co.*, 752 F.3d 807, 814 (9th Cir. 2014). "Basically, the judge is supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable. The district court is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to the jury." *Alaska-Rent-A-Car*, 738 F.3d at 969-70.

    b. <u>Plaintiff's Motion to Exclude Mr. Capron and Dr. Norton</u>

Plaintiff requests that the Court strike defense experts (1) Brian Capron, a Forensic Toxicologist from the Washington State Patrol Toxicology Laboratory; and (2) Dr. Robert Norton, MD, along with any mention of Plaintiff's alleged alcohol intoxication on the night of the accident. Plaintiff argues that such testimony is unreliable under Fed. R. Evid. 702, as well as irrelevant and unduly prejudicial under Fed. R. Evid. 401-403. Specifically, Plaintiff argues that the *only* evidence to support his intoxication on the night at issue is the EIA test performed by the hospital when Plaintiff was brought to the emergency room. However,

**ORDER RE: MOTIONS # 5**

Plaintiff states that this EIA test has been proven to be unreliable and that the results of this test have been contradicted by all other fact witnesses. Finally, Plaintiff argues that this evidence is not relevant because, under Washington law, it is inadmissible to prove intoxication. Thus, Plaintiff argues that the Court exclude any testimony from Mr. Capron and Dr. Norton pertaining to alcohol or intoxication because it "interject[s] [] speculative and prejudicial conclusions." ECF No. 79 at 2.

Defendants in response argue that they have not yet deposed the Person Most Knowledge from Providence Sacred Heart Hospital, who would be able to provide more information regarding the EIA test—specifically, whether the hospital takes any precautions to prevent against false positives. Defendants also argue that intoxication evidence is admissible to impeach Plaintiff's credibility and to offer a plausible explanation for the collision. Finally, Defendants argue that Plaintiff is not challenging Mr. Capron and Dr. Norton's qualifications, but instead is objecting to their specific conclusions, which (1) implicate questions regarding the weight of the evidence, which is the province of the jury, and (2) are premature, given that the parties have not yet been able to depose a representative from the hospital.

Plaintiff in reply argues it is disingenuous for Defendants to argue that their experts had sufficient information to formulate their conclusions that Plaintiff was intoxicated, but then later—once challenged—claim that the experts are missing basic information regarding Plaintiff's EIA test results. Plaintiff also argues that Defendants' experts are unreliable because they failed to account for other variables that might explain Plaintiff's NADH level. Finally, Plaintiff argues that relevance under *Daubert* is predicated on state substantive law, which does not permit intoxication evidence of the kind that Defendants are trying to offer.

Plaintiff objects to Mr. Capron and Dr. Norton on both reliability and relevance grounds. Thus, the Court addresses each in turn.

**ORDER RE: MOTIONS # 6**

*Reliability*

Plaintiff's reliability objections primarily question whether Defendants' expert witnesses accurately interpreted the EIA test. Specifically, Plaintiff argues that Defendants' expert witnesses failed to consider factors other than alcohol that may have affected Plaintiff's EIA test results. Plaintiff also argues that the EIA test results are not reliable because of the multitude of witnesses who all state that they did not see Plaintiff consume alcohol before the accident.

However, the Court finds that Plaintiff's reliability objections implicate questions regarding the credibility and weight of the evidence, which are more appropriately determined by the jury. *See Primiano*, 598 F.3d at 564 ("Shaky, but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion.").

*Relevance*

Plaintiff also argues that Defendants' intoxication evidence is irrelevant. Specifically, Plaintiff argues that, in order to prove an intoxication defense under Washington law, Defendants must show beyond a reasonable doubt that Plaintiff was either (1) per se intoxicated or (2) non-per se intoxicated. Plaintiff states that, to show per se intoxication, Defendants would need to provide a blood or a breath test that satisfies the standards adopted by the Washington State toxicologist—which the EIA test does not. Conversely, to prove non-per se intoxication, Defendants would have to provide evidence of a non-approved test along with additional corroborating evidence of Plaintiff's intoxication—which Plaintiff argues that Defendants do not have. Thus, Plaintiff argues that any evidence of his purported intoxication is irrelevant.

Defendants in response argue that they can present sufficient evidence to show non-per se intoxication, specifically (1) the EIA test results and (2) testimony about Plaintiff's behavior prior to the accident, which can demonstrate his

**ORDER RE: MOTIONS** # 7

impaired judgment, dangerous behavior, reduced reaction time, and affected visual abilities.

Plaintiff in reply reiterates that Defendants have no additional corroborating evidence of Plaintiff's intoxication. Additionally, Plaintiff states that—if Defendants' argument is that Plaintiff did not get out of the way fast enough, which thereby contributed to the accident—Defendants do not need to rely on intoxication evidence to make this argument. Thus, Plaintiff states that Defendants' intoxication evidence should be excluded as irrelevant and unduly prejudicial.

The Court denies Plaintiff's motion. Under Washington state law, a defendant can prove an affirmative defense of intoxication in a personal injury action if the defendant can show (1) the plaintiff was under the influence of alcohol at the time of the injury; (2) the plaintiff's intoxication was a proximate cause of the injury; and (3) the trier of fact finds that the plaintiff was more than fifty percent at fault. Wash. Rev. Code § 5.40.060(1).

Washington courts have found that the defendant must place careful emphasis on the proximate cause element. Specifically, a defendant cannot merely introduce evidence of a plaintiff's intoxication and have an expert testify that—given the plaintiff's blood alcohol content—it is likely that the plaintiff's intoxication caused them to act in a way that proximately caused the accident. *Gerlach v. Cove Apartments, LLC*, 196 Wash. 2d 111, 123-24 (2020) ("[Defendant] Cove offered the BAC results and Dr. Vincenzi's testimony to prove [Plaintiff] Gerlach's intoxication was a proximate cause of her injuries and that she was than 50 percent at fault. But . . . Dr. Vincenzi's proffered testimony was merely speculative as to Gerlach's behavior. He was going to speak to the general effects of intoxication, not the effect it actually had on Gerlach.); *see also State v. Lewis*, 141 Wash. App. 367, 389 (2007).

But a defendant *can* still introduce evidence of the plaintiff's intoxication to satisfy the first element of the affirmative defense: that the plaintiff was under the

**ORDER RE: MOTIONS** # 8

influence of alcohol at the time of the injury. *Fite v. Mudd*, __ Wash. App. __, 498 P.3d 538, 546 (Wash. Ct. App. 2021) ("*Gerlach*'s holding is narrower than a blanket exclusion of all urinalyses or toxicology reports showing the presence of intoxicants . . . . Instead, *Gerlach* only prohibits [a defendant] from relying solely on such a report to supportive the affirmative defense . . . . the urine screening here is still available for our de novo consideration of whether there was an issue of fact as to [Plaintiff's] intoxication.").

There are two ways to prove intoxication under Washington law: (1) per se intoxication and (2) non-per se intoxication. *See* Wash. Rev. Code §§ 5.40.060(1), 46.61.502; *see also State v. Donahue*, 105 Wash. App. 67, 73 (2001). Per se intoxication is when a person is found to have an alcohol concentration of 0.08 or higher as shown by an analysis of the person's breath or blood made under Wash. Rev. Code § 46.61.506. Wash Rev. Code § 46.61.502(1)(a). On the other hand, non-per se intoxication is when there is other competent evidence to show that a person was under the influence of or affected by intoxicating liquor. Wash Rev. Code § 46.61.502(1)(b)-(c).

In order for a breath or blood test to satisfy per se intoxication, the test must have been "performed according to methods approved by the [Washington] state toxicologist and by an individual possessing a valid permit issued by the state toxicologist for this purpose." Wash. Rev. Code § 46.61.506(3); Wash. Admin. Code 448-14-010. Here, because Plaintiff's EIA test was performed by the hospital as part of his medical treatment, the Court agrees that the EIA test is insufficient to prove per se intoxication. *See Armstrong v. Masker*, 2005 WL 762481 * 6 (Wash. Ct. App. 2005).

However, an EIA test can be used to argue in support of non-per se intoxication. Evidence that courts consider when determining non-per se intoxication include whether there are positive blood or breath tests indicating intoxication; whether the plaintiff admitted to their own intoxication; whether there

**ORDER RE: MOTIONS # 9**

is witness testimony about the plaintiff's consumption of alcohol; and whether there is witness testimony about the plaintiff acting in a manner consistent with intoxication. *See Fite*, 498 P.3d at 546 (finding sufficient evidence to support a dispute of material fact regarding the plaintiff's intoxication where there was a positive urine screening, the plaintiff's admission, and evidence of behavior consistent with intoxication); *Gerlach*, 196 Wash. 2d at 126 (noting that none of the plaintiff's companions testified as to how many drinks she consumed or whether she was extremely intoxicated); *Peralta v. State*, 187 Wash. 2d 888, 903 (2017) (the plaintiff admitted that she was under the influence of intoxicating liquors).

      Here, Plaintiff argues that Defendants' EIA test should be excluded because (1) without any other corroborating evidence of Plaintiff's intoxication, the EIA test is insufficient for Defendants to show non-per se intoxication and thus (2) the EIA test is irrelevant and only serves to be unduly prejudicial. *See Gerlach*, 196 Wash. 2d at 120 ("When evidence is likely to stimulate an emotional response rather than a rational decision, a danger of unfair prejudice exists . . . . Here, the trial court appropriately determined [Defendant's] proffered evidence was only minimally probative of the issues relevant to its affirmative defense and found the relative risk of prejudice against [Plaintiff] was unacceptably high.") (internal citations and quotation omitted).

      Defendants on the other hand argue that they do have sufficient evidence to create a dispute of material fact of Plaintiff's intoxication because they have both (1) the EIA test result and (2) testimony about Plaintiff's behavior right before the collision, specifically that he did not get out of the way until the last second, despite the car being visible before then.

      Defendants have met their burden of showing that their intoxication evidence, including Mr. Capron's and Dr. Norton's testimony, is relevant. Fed. R. Evid. 401's "basic standard of relevance is a liberal one." *Crawford v. City of*

**ORDER RE: MOTIONS # 10**

1  *Bakersfield*, 944 F.3d 1070, 1077 (9th Cir. 2019) (citing *Daubert*, 509 U.S. at 587).
2  Specifically, evidence is relevant if: (a) it has any tendency to make a fact more or
3  less probable than it would be without the evidence; and (b) the fact is of
4  consequence in determining the action. Fed. R. Evid. 401. Here, Defendants'
5  intoxication evidence and expert testimony from Mr. Capron and Dr. Norton are
6  relevant to their affirmative defense of intoxication—specifically non-per se
7  intoxication.

8       Additionally, Mr. Capron's and Dr. Norton's testimony do not raise the
9  same kinds of concerns that were at issue in *Gerlach*. Here, Defendants' experts
10 are not concluding that, just based on Plaintiff's EIA test results, it is likely that
11 Plaintiff's behavior was a proximate cause of the accident and his injuries. Instead,
12 Mr. Capron and Dr. Norton are simply relying on their scientific expertise to offer
13 opinions on why the EIA test is reliable and produced a valid result.

14      Finally, similar to Plaintiff's reliability objections, the remainder of
15 Plaintiff's relevance objections implicate questions regarding the credibility and
16 weight of the evidence, which are the province of the jury. The Court also believes
17 that, to the extent that Plaintiff believes that he would be prejudiced by intoxication
18 evidence, Plaintiff could alleviate this prejudice by undermining the credibility of
19 the evidence. *See Donahue*, 105 Wash. App. at 74-75 ("Unlike the per se offense,
20 [a party] may attack the accuracy and reliability of the technique or method used in
21 analyzing the blood alcohol level."). Thus, the Court denies Plaintiff's Motion to
22 Exclude Mr. Capron and Dr. Norton.

23                c.    Plaintiff's Motion to Exclude Dr. Loftus

24      Plaintiff requests that the Court strike defense expert Dr. Geoffrey Loftus,
25 PhD, because his testimony is neither reliable nor relevant. First, for reliability,
26 Plaintiff argues that Dr. Loftus's unsigned draft report frequently misquotes
27 Plaintiff's deposition testimony without citing to the transcript; ignores other
28 evidence in the record; fails to quantify his methods or the data he relies on; and

**ORDER RE: MOTIONS # 11**

generally concludes that Plaintiff was either lying during his deposition, was intoxicated during the collision, or has developed a false memory about the collision. Second, for reliability, Plaintiff argues that Dr. Loftus's testimony is not a proper subject for expert testimony because jurors are capable of making determinations related to a witness's perception of an event and how that perception might be affected by outside factors, such as lighting, attention, and stress. Finally, Plaintiff argues that, even if Dr. Loftus's testimony is proper expert testimony, it should be excluded because it is unduly speculative and prejudicial.

Defendants in response argue that Dr. Loftus's testimony is both reliable and relevant. First, for reliability, Defendants argue that Dr. Loftus is a Professor Emeritus of Psychology at the University of Washington and has studied human and perception for approximately five decades. Defendants also argue that Dr. Loftus has performed many published studies regarding how a memory is formed and then subsequently recalled. Second, Defendants argue that Dr. Loftus's testimony is relevant because it will help the jury understand how different witnesses to an event can form significantly different memories, even though both witnesses believe themselves to be telling the truth. Moreover, Defendants state that Dr. Loftus will testify about how memory can fail and how this can affect eyewitness testimony, which will aid the jury in making credibility determinations.

Plaintiff in reply argues that Defendants "have abandoned most of the opinions set forth in [Dr. Loftus's] unsigned draft report" and instead appear to suggest that Dr. Loftus will only testify regarding general principles of perception, memory, and memory formation. However, Plaintiff argues that even this limited testimony should still be excluded because Defendants will use Dr. Loftus's testimony to suggest that Plaintiff's memory of the collision is false. Specifically, Plaintiff states that because "there is no purpose for Loftus's testimony other than burnishing Defendants' arguments about Plaintiff's credibility with a patina of

**ORDER RE: MOTIONS** # 12

expertise, the danger of unfair prejudice is palpable and the testimony should be excluded." ECF No. 117 at 6.

The Court grants Plaintiff's motion in part and excludes the portions of Dr. Loftus's expert report and testimony that are not grounded in a fair characterization of the evidence. Specifically, Dr. Loftus concludes that Plaintiff's memory of Defendants' truck crossing the center line and driving towards him is "implausible on the face of it, is not one that he had recounted prior to his deposition, and is inconsistent with other evidence . . . . Why then did Mr. Robertson describe a memory that is so widely contradicted by other evidence? There are two possibilities. The first is that Mr. Robertson is lying. The second is that Mr. Robertson developed a *false* memory of Mr. Dorn crossing the centerline and aiming at him—and that in his deposition, he accurately and honestly described this false memory." ECF No. 113, Exhibit 2 at 2.

Dr. Loftus's first assertion that Plaintiff's account of the events is "implausible on its face" is not grounded in his expertise. Dr. Loftus is a professor of psychology, not an accident reconstructionist specialist—he has no way of concluding that the collision as Plaintiff describes it was "implausible." As for Dr. Loftus's second assertion that Plaintiff had never provided this version of events prior to his deposition, this is outside the scope of Dr. Loftus's knowledge. Dr. Loftus does not know Plaintiff personally and has seemingly never spoken to Plaintiff in person—thus, there is no way for Dr. Loftus to know whether Plaintiff has told a consistent story regarding the collision. Finally, Dr. Loftus's third assertion that Plaintiff's account is "inconsistent with other evidence," this is an exaggeration of the evidence in the record. Although Plaintiff's account is inconsistent with some testimony and evidence, it is also consistent with other testimony (*i.e.*, testimony from Laura Liebman, who is Plaintiff's partner and who was in the car with Plaintiff on the night of the accident). Thus, for Dr. Loftus to jump from "Plaintiff's account is inconsistent with some evidence in the record" to

**ORDER RE: MOTIONS** # 13

his conclusion of "Plaintiff is either lying or has a false memory" is not supported by the evidence. Thus, the Court excludes these portions of Dr. Loftus's report as unreliable because they lack a basis in Dr. Loftus's expertise, knowledge, and the factual record.

However, the Court denies Plaintiff's motion for the remainder of Dr. Loftus's report and testimony. The Court finds that Dr. Loftus is qualified to testify as a general expert about memory and perception of eyewitnesses and that his testimony would be helpful to the jury in reconciling the conflicting accounts of the accident.

## II.   Providence Sacred Heart Medical Center's Motion for a Protective Order or to Quash or Modify Subpoena

Providence Sacred Heart Medical Center ("PSHMC"), an interested third party in this case, requests that the Court issue a protective order or, in the alternative, quash or modify Defendants' subpoena. Specifically, PSHMC argues that Defendants' February 1, 2022 Amended Subpoena to Testify at a Deposition in a Civil Action seeks protected and confidential information about the hospital's internal policies and procedures, as well as about the technical specifications of the EIA test, which is subject to a confidentiality agreement between PSHMC and Siemens. PSHMC requests that the Court (1) issue a protective order to prevent the hospital from disclosing Items 2, 3, 4, 5, 6, 8, 9, 10, 11, 12, and 13 in the Amended Subpoena; (2) quash the subpoena in full; (3) modify the subpoena to remove these requested items; or (4) issue a protective order to prevent the disclosure of the requested information outside of the scope of the present litigation. PSHMC also requests that its Motion for a Protective Order be heard on an expedited basis.

Defendants in response agrees to proceed in accordance with PSHMC's fourth proposed option: specifically, for the Court to issue a protective order to prevent disclosure outside of the present litigation. Defendants state this will allow

**ORDER RE: MOTIONS # 14**

them to seek evidence relevant to their affirmative defense of intoxication, while also alleviating any confidentiality concerns.

The Court agrees that PSHMC's fourth proposed option is the most appropriate. Thus, the Court grants PSHMC's request for a protective order to ensure that the requested information is not disclosed outside of the current litigation.

### III. Defendants' Motion to Continue Briefing Deadlines

In their motion, Defendants request that the Court continue the briefing deadlines associated with Plaintiff's Motion to Exclude Mr. Capron and Dr. Norton until after Defendants have been allowed to depose the Person Most Knowledgeable from Providence Sacred Heart Medical Center. However, the Court has already ruled on Plaintiff's Motion to Exclude. Thus, the Court denies Defendants' motion as moot.

Accordingly, **IT IS HEREBY ORDERED:**

1. Plaintiff's Motion to Exclude Defense Experts Norton, Capron, and Ries, ECF No. 79, is **DENIED**.

2. Defendants' Motion to Continue Briefing Deadlines Associated with Plaintiff's Motion to Exclude Expert Witnesses, ECF No. 94, is **DISMISSED as moot.**

3. Plaintiff's Motion to Exclude Loftus, ECF No. 98, is **GRANTED in part** and **DENIED in part**.

4. Providence Sacred Heart Medical Center's Motion for Protective Order, or in the Alternative, to Quash or Modify Subpoena, ECF No. 125, is **GRANTED in part**.

5. Providence Sacred Heart Medical Center's Motion to Expedite, ECF No. 126, is **GRANTED**.

//
//

**ORDER RE: MOTIONS # 15**

6. The parties **shall** file a Stipulated Protective Order regarding PSMC's confidential information on or before **February 23, 2022**.

**IT IS SO ORDERED.** The District Court Clerk is hereby directed to file this Order and provide copies to counsel.

**DATED** this 16th day of February 2022.



Stanley A. Bastian
Chief United States District Judge

**ORDER RE: MOTIONS** # 16